## PROCEDURE FOR ENFORCING STOCKHOLDERS' STATUTORY LIABILITY.

Court of Appeals for Fulton County.

GEORGE W. GRIFFIN v. EDWARD F. ROWLEY, RECEIVER.*

Decided, December 28, 1914.

*Summons—Attempted Service by Publication on Resident of the State —Invalidity of, Not Material When—Enforcement of Statutory Liability Against Stockholders—Proceeding in the Nature of a Suit in Equity—Stockholders in Court by Representation—Matters Which May be Conclusively Adjudicated in Their Absence—Preservation of the Right of a Personal Defense—Pursuit of a Stockholder in Another Jurisdiction.*

The invalidity of service by publication upon a resident of Ohio, in an action to assess the statutory liability of stockholders of an insolvent corporation, constitutes no defense where legal service has been obtained in a subsequent action to recover the amount found due.

*Ham & Stahl,* for plaintiff in error.
*R. S. Holbrook* and *C. R. Banker,* contra.

GRANT, J.; WINCH, J., and MEALS, J., concur (sitting in places of Judges Kinkade, Richards and Chittenden).

Error to the court of common pleas.

To avoid confusion and for the purpose of clearness, in this opinion the order of parties will be designated as it was in the court of first instance; that is to say, in the reverse position of that stated in the caption here.

Prior to January 25th, 1914, the Union Central Savings Bank Company, whose receiver the plaintiff is, was a corporation of the state of Ohio. Also prior to that date, that corporation became indebted to the Central Savings Bank Company, also a corporation, and to others, its creditors. At that date also, and

*For decision below, see 14 N.P.(N.S.), 625.

when such indebtedness arose, the defendant was a stockholder
in the Union Central Savings Bank Company. At that date the
Central Savings Bank Company had reduced its claim to judg-
ment, and an execution having been sued out against the debtor
upon it, and this having been returned unsatisfied, the creditor
in question began a suit in the Court of Common Pleas of Lucas
County to compel satisfaction of its claim by the stockholders of
the debtor corporation, under the statutory liability at that
time existing by the Constitution and laws of Ohio in that be-
half provided.

In the petition in that cause and in an amendment to it, the
creation of the debt named, the rendition of judgment thereon, the
failure of the debtor to satisfy the execution issued upon it, the
insolvency of the delinquent corporation, the fact that the de-
fendant, among others, was a stockholder at the time and when
the credit was extended, and other proper averments were aptly
made. The plaintiff in that action sued on its own behalf, and for
the benefit as well of all other creditors of the alleged insolvent
debtor. To that petition the corporation was made a defendant,
as also were its officers and shareholders, including the defend-
ant. No personal or *actual service,* however, was at any time had
upon him in the action, nor was any attempted to be had upon
him. On the contrary, he was named in the proceeding as a de-
fendant non-resident of Ohio, upon whom such service could not
be had within the state, and thereupon and for that stated rea-
son, constructive service upon him as such non-resident defend-
ant, and as a resident of the state of Indiana, was attempted and
purported to be had, by publication, in the form allowed by
statute for that purpose having been first made.

This allegation of non-residence and the consequent inability
to have actual and personal process upon him, was not true in
point of fact, the defendant being at the time a resident of Fulton
county, Ohio, having an actual and visible domicile there, and
having had at no time a residence in the state of Indiana.

The prayer of the petition in that case was for an ascertain-
ment by the court of the several amounts due from the defendant

corporation to the plaintiff in the action and to the other creditors on whose behalf it sued, for the like ascertainment of the stockholders of the corporation, and for an order requiring each of these to pay his ratable share necessary to satisfy the debts due to the plaintiff and its creditors, in accordance with the liability of each created by statute. A receiver also was asked for, to collect the amounts so to be found forthcoming from the shareholders of the insolvent corporation.

By an interlocutory order in that cause a referee was appointed, who was directed to try the issues both of law and fact and to report his findings and decision thereupon, the corporation itself having duly entered its appearance in the action.

The referee reported his findings of fact and conclusions of law arising in the proceeding, those material to the present inquiry being to the effect that the defendant here, George W. Griffin, was a stockholder in the defaulting corporation to an original amount of $500, upon which there was a then present liability of $608.91, under the statutes of Ohio.

Upon the coming in of this report, the court approved it, with certain modifications, unimportant in the present controversy. The confirmation was followed by a finding of the court that the defendant had become liable to the creditors of the defunct corporation in the sum already named, that being the amount of his holding with the interest which had accrued since the liability attached, and that this should be collected by the process about to be awarded, "or so much thereof as may be necessary to secure the payment of the amounts heretofore found due the several creditors, together with the costs," etc., the finding in this respect and so far, being in terms contingent as to the amount to be paid by the defendant, although it was arithmetically certain that such amount must be the entire amount.

It was then by the court "ordered, adjudged and decreed" that the plaintiff in that action and its co-creditors "recover" from the several shareholders the amounts set opposite their names, that set opposite the name of the defendant here being the full amount of his assessment, already mentioned, "or so

much thereof as may be necessary to pay the aforementioned debts  *  *  *  and it is ordered that execution issue therefor.''

This is the formal language usually employed in the rendition of a money judgment *in personam*. Nevertheless, the same contingency is reserved in terms as to the amount of it as is done in the basic finding, although, here again it was obviously certain that the contingency of a less amount than the full amount could not, under the circumstances, happen. It is supposed that the awarding of the execution was wholly redundant, the right to that accruing as of course, if there was a personal money judgment.

A receiver in the action was appointed thereupon, to collect the various sums ''hereinbefore found to be due from said respective stockholders, or so much thereof as may be necessary to pay the said claims against said corporation,'' the language denoting liability still being less than absolute as to the amount to be required from the defendant, although in fact such amount could in no manner be uncertain.

In the decree now being recited, the only language as to defendants to the action non-residents of Ohio, is the following: ''As to the defendants who are non-residents and upon whom service was had by publication, which service is hereby approved and confirmed  *  *  *.'' And, ''Said defendants so found to be non-residents are  *  *  *  George W. Griffin.'' This language seems to assume, but not make, a finding of non-residency, in what state or jurisdiction does not appear.

As to the assumed, but not found, defendants non-residents of some place, ten in all, and upon whom service by publication is assumed to have been properly had, the receiver is authorized by the decree to pursue by action ''outside of the state of Ohio, or *wherever jurisdiction may be had,* for the purpose of collecting the several amounts so found due.''

That judgment and decree is still unreversed and operative to effect, so far as the record here discloses.

Acting under the authority thus conferred, the plaintiff here—who is the receiver named in the decree—commenced the present

action against the defendant, in this, the county of his residence, declaring for substance on the proceedings and judgment in the original suit in Lucas county, and praying judgment in the amount there purported to have been fixed as the liability of Mr. Griffin as the aforementioned stockholder, under the statute then in force, and interest. In this action the defendant was personally summoned. He answered, admitting the proceedings in Lucas county and the findings of that court thereupon, in substance, and admitting—by not denying—that Griffin was a shareholder, as alleged. By an amendment to the answer, he was expressly admitted to have been such, and in the amount found in the other suit.

The answer, aside from its admission, concerned itself with two things: first, that the defendant was sued in the Lucas county cause, not by his full and proper name of George W. Griffin, but by the name of G. W. Griffin only, which was the fact; and, second, that the finding of that court to the effect that the defendant was a non-resident of Ohio and therefore amenable to constructive service by publication as such, was wholly false and that no service in the action was ever had upon him, or jurisdiction acquired over him, that could be made the basis of the present action. The assault upon the Toledo judgment in this respect was vigorous to the verge of violence. Many, many times in the answer, what the Lucas common pleas did, and decreed, found and adjudged, is characterized by the limiting word "pretended." But the substance of that document is as we have stated. The allegation is that the defendant was not only at all times a resident of Ohio, but that the fact ought to have been well known, and probably was well known, or at least could easily have been ascertained, by the instigators of that action. A separate defense of the statute of limitations also was pleaded in the answer. To the name of answer in the pleading now referred to the title cross-petition was added. But the prayer of it was wholly defensive in character and amounted to no more than asking for a dismissing of the petition. A reply to the answer was made, not materially changing the issues made, or attempted to be made, in the case.

After much intervening litigation, not necessary or useful to recite here, the cause came on for trial to a jury in the court below. A motion by the defendant for judgment on the pleadings was denied.

The plaintiff introduced a full transcript of the record and proceedings of the court of Lucas county, of the tenor and effect already narrated, and rested.

The defendant then moved for a judgment in his favor on the plaintiff's case, and this was refused. He then produced evidence the tendency of which was to prove his residence was always in Ohio and that the plaintiff in the case of first instance had full opportunity to know the fact, and rested.

Thereupon the defendant renewed his motion for a judgment in his favor, as upon undisputed evidence decisive of the case, but reserved a right to go to the jury upon the evidence if the motion should be denied. It was denied.

The plaintiff then moved for judgment upon the evidence, in his favor and asked that the jury be directed to return a verdict for him.

Before this latter motion was passed upon by the court, the defendant presented a series of written instructions and requested that they be given to the jury as the law governing the case. These amounted to the direction of a verdict for the defendant, on the ground that since he was not a non-resident of Ohio at the time he was alleged to have been so in the proceedings had in Lucas county, the notice published for him was inert to confer jurisdiction and that any judgment in that cause purporting to bind him was void for want of jurisdiction to make it—it not being claimed that any process upon him personally, by summons, was obtained in that action.

These requests were severally refused, and the court proceeded to direct the jury to return a verdict for the plaintiff for the sum claimed by him, which was done, accordingly.

Appropriate exceptions were saved to these actions of the trial court, adverse to the defendant. A motion for a new trial was seasonably made and overruled, to which an exception also was taken, and judgment upon the verdict was rendered.

And these several rulings of the trial court are assigned as so
many errors to be corrected here by a reversal of the judgment
below, and complained of in the present proceeding.

The people of Ohio, by their adoption of the Constitution of
1851, issued their imperative mandate to the legislatures and
courts of the state, requiring the one to pass adequate laws se-
curing to creditors of corporations their dues by fixing an indi-
vidual liability upon their stockholders, and the other to ad-
vance the remedies thus provided. The constitutional purpose
was to supply by law that conscience which a soulless body could
not have, and thus to check the improvident habits which corpo-
rations not thus restrained surely would have.

Having this view of the mischief aimed at in view, the Legis-
lature of Ohio, in obedience to the command, have passed laws
progressively appropriate to the purpose and it is the duty of
the courts to administer these, upon occasion, in the spirit of
the constitutional provision for safeguarding the rights of cor-
poration creditors.

Disregarding as not useful here, the genesis of the legislation
referred to, and coming at once to that which can usefully be
brought to bear upon the present contention, it is to be said
that by the provisions of what became in the revision of 1880,
Section 3260 of the Revised Statutes of Ohio, the individual lia-
bilities of stockholders might be enforced by a creditor of a cor-
poration at the suit of the latter against all the shareholders,
jointly. The contingency of non-residence or failure to obtain
service of process upon any for any other reason, does not seem
in that act to have been contemplated; in any event, it was not
provided for.

The scope of remedy was materially widened by the amend-
ment found in Ohio Laws, Vol. 91, page 88, as follows:

"Section 3260. (*How Such Liability Enforced; Inability to
Summons Stockholders, Etc.*) A stockholder or creditor may en-
force such liability by action jointly against all the holders
or owners of stock, which action shall be for the benefit of all
the creditors of the corporation, and against all persons liable
as stockholders, and in such action there shall be found and de-

termined the amount payable by each person liable as stockholder on all the indebtedness of the corporation, in which adjudication no costs shall be taxed to nor collected of any stockholder to an amount which, together with the amount to be paid on said indebtedness, will exceed the amount of the stock on which he is liable, provided, that in any action the plaintiff may file in the court a sworn statement that a stockholder or stockholders or the legal representatives of a deceased stockholder have not been summoned, giving their residence, if known, and that it is impracticable to secure the services of summons upon such stockholder or such legal representative of a stockholder, and remitting from the claims of the plaintiff or of other creditors consenting, so much as may be found payable by such stockholders, not served with summons except those who may be insolvent or non-resident of the state, and judgment shall be rendered against the stockholders who have been served with summons, for the pro-rata amount for which they would be liable if all solvent stockholders resident of the state were served with summons; and when a creditor has prosecuted against a corporation an action of (at) law begun before any action to enforce the stockholders'· liability and has recovered final judgment only after such an action to enforce the stockholders liability has been prosecuted to a final decree in the court in which the action was commenced, such judgment creditor may bring a like action against the stockholders of the corporation to enforce such judgment at any time within four years after the recovery of his said judgment, but the stockholders shall not be liable for any amount in excess of that provided in section thirty-two hundred and fifty-eight.''

Without remark as to the respects in which the enlargement is evidenced by this enactment, except to say that the power to pronounce personal judgment against liable shareholders is restricted by it to such as ''have been served with summons,'' and that it does not undertake to absolve such as have not been so served—although for aught that appears they may be parties to the action—we pass to the act of April 16th, 1900, which further broadened the field of remedy and crystallized the law of procedure in the following language:

''Section 3260. Whenever any creditor of a corporation seeks to charge the directors, trustees, or other superintending officers

of a corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose in any common pleas court which possesses jurisdiction to enforce such liability.

"Section 3260a. The court shall proceed thereon, as in other cases, and, when necessary, shall cause an account to be taken of the property and obligations due to and from such corporation, and may appoint one or more receivers.

"Section 3260b. If, on the coming in of the answer or upon the taking of such account, it appears that such corporation is insolvent, and has not sufficient property or effects to satisfy such creditor, the court may proceed to ascertain the respective liabilities of the directors, officers and stockholders, and enforce the same by its judgment, as in other cases.

"Section 3260c. In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are made parties to an action in which a judgment is rendered, if the property of such corporation is insufficient to discharge its debts, the court shall give notice to non-resident stockholders as provided in Sections 5048, 5049, 5050, 5051 or 5052 of the Revised Statutes, and shall first proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

"Section 3260d. If the debts of the company remain unsatisfied, the court shall proceed to ascertain the respective liabilities of the directors or other officers and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment, as in other cases. The court may authorize and direct the receiver to prosecute such action in his own name as receiver, as may be necessary, in other jurisdictions to collect the amount found due from any officer or stockholder.

"Section 3260e. Whenever any action is brought against any corporation, its directors or other superintending officers, or stockholders, according to the provisions of this chapter, the court, whenever it appears necessary or proper, may order notice to be published, in such manner as it shall direct, requiring all the creditors of such corporation to exhibit their claims and become parties to the action, within a reasonable time, not less than six months from the first publication of such order, and, in default thereof, to be precluded from all benefit of the judgment which shall be rendered in such action, and from any distribution which shall be made under such judgment.

"Section 3260*f*. Upon a final judgment in any such action against an insolvent corporation, the court shall cause a just and fair distribution of the property and assets of such corporation or the proceeds thereof to be made among its creditors."

This states the statute in substantially its present form, as Sections 8693 to 8697 of the General Code. It is the law applicable to this case and a proper consideration given to it must coerce our conclusion upon the merits of the petition in error here.

The nature of the action thus authorized is stated by Spear, J., in *Kulp* v. *Fleming,* 65 O. S., 321, at 339, as follows:

"True, our method of enforcing the liability of stockholders is by a proceeding in the nature of a suit in equity which contemplates the bringing in of the corporation, of all the creditors, and of all the stockholders, and a decree which will adjust and finally settle the rights and liabilities of the parties. This is made practicable because the corporation is a creature of our law, the stockholders principally residents of the state, and a multiplicity of suits may thus be avoided."

The sweepingly equitable scope of the proceeding is not diminished by the subsequent legislation, which allowed as defendants the directors and officers of the corporation, as well as the corporation itself and its stockholders, the basic purpose plainly being, as is suggested by the language just quoted, to preclude many suits where the remedy may be made effectual by one suit.

The first words of this quotation signify that the learned judge was differentiating the Ohio law and policy in this regard from the possible legislation of other states in respect of the subject, suggesting caution in the application of adjudications elsewhere bottomed, perhaps on materially different statutory provisions. But the point now emphasized is that the proceeding is equitable in quality, as well as highly remedial in ultimate design. Possibly this inference may be further stretched in the same direction by observing that the name of the initial pleading in the

proceeding is called a "complaint" and not a petition, and so far departing from the provisions of our procedure statute fixing the nomenclature of papers.

Under this act the corporation is a necessary party if its solvency is called in question. Such of its directors and officers as are sought to be charged in the action with a liability, must also be parties. And so must such stockholders as are being sued in the action as for unpaid subscriptions for their holdings, and doubtless such other shareholders upon whom the judgment should definitely be fastened in a fixed sum of money to such effect as would cut off personal defense of non-ownership of stock, or payment of the liability being enforced, or an allowable set-off to it. Some further clue to the line of cleavage between those things in the suit as to which the shareholder must be considered to be vicariously represented by the corporation, and those which may be used to fix a money obligation, beyond the reach of an independent personal defense, may be found in the syllabus of *Kulp* v. *Fleming, supra,* as follows:

"A provision of statute that the stockholders of a corporation shall be individually liable to creditors for the debts of the company does not alone create the liability. It is rather a legislative requirement that whoever becomes a stockholder shall thereby assume an individual liability, and thus gives legal effect to the acts of the parties. The actual liability becomes operative by the act of the shareholder in becoming such, being founded on his proposal to become liable which arises from the membership and individual agreement to abide by the organic law of the corporation, and the acceptance thereof by the creditor by extending credit. Such obligation is contractual."

Some things which the court can do in a suit thus authorized, and which were done in the suit prosecuted to effect in Lucas county, are things in which the shareholder is conclusively in court by representation only. His representative in that respect is the corporation. In those respects he surrendered his right to appear or to have process, personally, when he subscribed for his stock, *ipso facto*. By doing *that*, in legal effect he issued to

the corporation his letter of attorney, irrevocably sending his company to act and answer in his stead in those respects. Among the things in regard to which the corporation is deemed conclusively to represent him, are the questions of its own insolvency, the distribution of its assets, the necessity of fastening the statutory liability upon its shareholders and the amount of such liability, as a result flowing from their status as such, to be visited upon each. And this is equally so whether the individual stockholder is a party to the action or not. In either case he is in court in the artificial personality of his company (*Spring, Trustee,* v. *Rose et al,* 75 O. S., 355). The case at bar perhaps may be assimilated to that case upon the consideration that the signing of the premium notes in the one, was the equivalent in legal contemplation of the subscription for the stock in the other.

The landmark which is now sought to be made visible is suggested in the language quoted in the opinion in the case just cited from *Commonwealth Mutual Fire Ins. Co.* v. *Hayden et al,* 61 Neb., 457, apparently approvingly:

"We do not mean that it (the judgment of assessment) is conclusive as against any individual sued as a stockholder, that he is one, or if one, that he has not already been discharged by payment to some other creditor of the corporation the full measure of his liability, or that he has no claims against the corporation, or judgments against it which he may, in law or equity, as any debtor, whether by judgment or otherwise, set off against a claim or judgment; but in other respects it is an adjudication binding him."

The bead-roll of authorities called by our Supreme Court in support of this proposition seems to settle the law for us in this respect, as we think.

It appears to be equally clear that there are still other things that the court is competent to adjudicate, by permission of the statute last quoted, to binding effect and for the purposes of the suit, without the personal presence of the individual stockholder, in court at the command of a summons to judgment, and as to

the conclusiveness of which it is immaterial whether he is there or absent. And it was competent for the Lucas county court to pass upon such matters, regardless of whether its writ had effectually run as to him individually or not. These things may be said to sound *in rem;* if the expression may be allowed, they are *quasi in rem.*

They include the appointment of a referee to take an account of the assets and liabilities of the corporation adjudged to be insolvent, and the number and persons of its stockholders and the amount of the holdings of each, as well as the appointment of a receiver in the action and the using of him to force the collection of the assets in any appropriate manner, including the asset in the form of a statutory liability of the indivdual stockholders, when ascertained and fixed by adequate judgment, rendered after jurisdiction is acquired. These things have to do with the assets of the corporation and not of themselves with the personal obligation of the shareholder, although they may be a part of the necessary train of causes which are to eventuate in fixing such a liability. But primarily and of themselves, they look to the husbanding of the corporation's present resources and the sequestration of such as are yet *in gremio legis* only, to the ultimate payment of its debts. If in the suit the shareholder is in court in person, at the foot of a summons to judgment, as well as being there *sub modo* under the aegis of his company, then the court may proceed further and pass a judgment upon him finally, in such wise that its writ of execution may run against him for collection by any of the processes known to the law. Such a judgment, proceeding under a jurisdiction acquired by personal process, cuts off and determines any personal defenses which the debtor may interpose, such as non-stockholdership, payment of the liability, or a set-off against it; for then he will have had his day in court and his opportunity to be heard. But unless he is so in court in obedience to its process, he is not concluded as to these rights of defense, because in such event there has not been due process of law as to him in those respects, and the law of the land has not in his case been observed.

In most instances of the enforcement of the statutory liability of stockholders, the former of the two alternatives is the fact. The shareholders are generally residents in the same jurisdiction with the locus of the corporation and the writ of the court will run to the domicile of all of them. They are therefore usually before the court by process of its summons, so that a final adjudication can be had as to all in one action, and a multiplicity of suits and of costs is avoided. This is the reason given by Judge Spear for the form of proceeding taking its present shape, to the end that the rights and obligations of all may be worked out in a single action, if that is practicable, and so far as it may be practicable, the whole squaring with the equitable theory which is the reason of the statute.

But if, for any cause, personal service is not had on a given shareholder, so that a money judgment, upon which execution may issue, can not be rendered as to him, no good reason is perceived why the court may not still pass upon these matters as to which he is represented vicariously by his corporation and those which are *in rem* merely, to all proper legal effect, and so far conclude him. In such case his personal rights of defense the law preserves to him against his day in court, when he is there by due process to answer, with his consequent opportunity to be heard. For, after all and in the last analysis, these two things are the sum total of his rights. In the underlying suit in Lucas county, the court had jurisdiction to do what it purported to do in the matters in which the stockholders were conclusively represented by the corporation and as to those which were *quasi in rem only*. And when these were adequately attended to; that is to say, when the insolvency of the corporation, the amount of its debts, the number and persons of its shareholders and the shares held by each, were fixed—when these merely mechanical operations were performed, arithmetic and the statute did the rest. It was then a mere thing of computation. An adding machine could render the judgment from these data, as well as the court, to the great saving of judicial mental tissue.

And upon a critical reading of the judgment rendered in the case in Lucas county, it may perhaps be doubted whether more was there attempted to be done. For in all cases in the decree where a money liability is undertaken to be fastened upon individual defendants, the figures reached by the perfunctory mechanical process just noted are limited to such part thereof as might be necessary to liquidate the demands of the corporate creditors. And this result is not disturbed in the law's eyes by the self-evident fact that it was all along certain to take an amount sure to do this, to-wit: the amount of each shareholder's stock, plus interest.

And what the court in that judgment did in respect of service upon the defendant by publication, in like manner is in the twilight zone of literal uncertainty. The court assumed a publication and confirmed the assumption. And it did no more, having regard only to the wording of its decree. It did not find the fact of publication. Attention has already been called to the court's language in both these respects.

But, let it be granted that this view is wholly a mistaken view, and that the court in Lucas county undertook to go beyond the point of adjudication to which, as has been shown, it lawfully could go, and what follows? What did the plaintiff take by it? And what did the defendant lose by it? The answer in either case must be, nothing. It would be destructive of every just principle of jurisprudence to allow that a legal right or a correlative legal obligation can arise from a falsehood. And the non-residence of the defendant in the state of Ohio was admittedly a falsehood. A cart load of solemn adjudications in the form of findings could not make it a truth. Immunity from collateral attack could not make it true. The allegation of it was altogether inert and conferred no right and called for the performance of no legal duty. It is not now perceived why this result should not be found in this case.

And if the nullity of this attempted service by publication be admitted, so that in the judgment in Lucas county the law

saved to the defendant his right still to have his day in court, and his right to wage his personal defenses to the creditors' claims against him, it does not follow, inevitably, as we think, that he must go free of his real obligation in that respect, when the right to enforce it is legally asserted. If the nugatory character of the attempted constructive service be allowed to work an immunity against a personal judgment in that case, does that fact operate as a judgment against his being made to pay a just debt when properly haled to court for the purpose of making him discharge an unperformed legal duty? We must think not.

But the decree in the case in Lucas county did one thing more, and that it did have a right to do. It authorized the court's receiver "to bring suit or suits against any or all of said defendants outside the state of Ohio or *wherever jurisdiction may be had,* for the purpose of collecting the several amounts so found due." This sentence is to be read, manifestly, we think, as if a comma were placed after the word "defendants." As to the defendants assumed to have been found to be non-residents of the state, the decree has already authorized the receiver, specifically "to take all such actions he may deem necessary to collect the amount so found due" from them. The authorization to bring suits extended to all defendants in other jurisdictions, whether resident or not in Ohio. And this is strictly pursuant to the Ohio statute.

Acting in accordance with the authority this conferred, the receiver brought the present action in Fulton county—the residence county of the defendant—where the defendant was summoned in the action.

Due process of law includes two essential things—notice and an opportunity to be heard. The defendant, therefore, has had due process of law. The defendant would have been entitled to no more if the purported non-residence assumed in the Lucas county case had been a fact. In all the essential things as to him the law of the land has been observed—that law which, as Webster defined it in the Dartmouth College case, " which hears

before it condemns, which proceeds upon enquiry, and renders
judgment only after trial.'' In this case all the substantive de-
fenses to which he was entitled have been open for the defendant
to make; that is, all the defenses as to which the corporation must
not be held to represent him, and all matters which were not
matters of computation alone, arising from the fact of insolv-
ency, the amount of debts and the number of shareholders and
the amounts of their holdings. Is it a question that he is a stock-
holder? His answer in this case admits it. Has he paid his
share of the indebtedness thence arising? It is not claimed that
he has. Has he a set-off? He does not assert it in his answer.
Having no defense to make on the merits of the case, shall he
be exempt from a liability otherwise complete because of the as-
sumed misdirected act of the Lucas county court in finding him
a resident of a state in which his rights could have been in no
way differently treated than if the finding had been that he re-
sided in Ohio? Upon the footing of substantial justice and the
administration of a law to which he assented by becoming a
stockholder, it is hard to see that he should. He is deprived of
no right by being sued in his own county in Ohio rather than in
Indiana, his putative residence, if the record in the Lucas county
case imports verity. And no additional burden is placed upon
him. That he has a summons instead of a notice is to the pre-
judice of no right of his. In *McVicker* v. *Jones,* 70 Fed., 754, it
is said:

''The twelfth cause of demurrer is grounded upon want of an
averment of notice to the defendant of the judgment or claim
against him before commencement of the suit. The notice to
persons sought to be charged, required by the Kansas statute
before execution shall issue against the stockholder, would seem
to have reference to the motion made in open court, that exe-
cution issue against the stockholder, and not to the original
claim, or the process anterior to the judgment. Under the stat-
ute the creditor may elect to proceed by motion and notice, with
a view of obtaining execution direct against the stockholder, or
by his action upon the judgment, giving, of course, the usual
notice required in instituting proceedings at law; and no reason

is seen why the stockholder can not avail himself of all matter by way of defense in an action at law which would be open to him as objection against a motion for execution, where the creditor elects to proceed under such motion rather than by action. Looking to the statute, therefore, it can not be found that it either expressly or impliedly contemplates notice of the claim to the stockholder before commencement of an action at law, where the creditor elects such proceeding as his remedy.''

Holding, as we do, that the action of the court in Lucas county—whatever it may literally have been—in regard to notice to the defendant as a putative resident of Indiana, was null and of itself conferring no right on the receiver that he would not have had without it, leaving the receiver, both by its decree and the express authority of the statute, with full power to pursue the defendant stockholder into "other jurisdictions," one of which "other jurisdictions" might be, and in this case is, Fulton county, Ohio,—which the receiver has done in the present action—finding these things, we say, and to our apprehension the two questions mainly argued before us, namely, the effect of the assumed constructive service by publication and whether the answer here is a direct or a collateral attack on the Lucas county judgment, become relatively unimportant. The former disappears by elimination, and the latter loses all coercive force through entire irrelevancy. In short, neither is longer in the case.

That leaves the receiver in the position of obeying the order of the court whose officer he is, in pursuing the defendant by suit in the jurisdiction of his residence, declaring in that suit on the judgment rendered in Lucas county, which conclusively furnished the basis of his action as to all things in which in the suit of origin the corporation represented the defendant and as to the matters adjudicated which sounded *in rem*, leaving open to the latter all defenses which he could have made in the Lucas county case had he been there present visibly in person at the behest of the court's summons. This pursuit to another jurisdiction was permitted also by the statute.

It has been made, and the defendant is having that which he complains that he did not have in Lucas county—his day in court and due process of law. When thus brought to the bar his defenses are not that he is not a stockholder, or that he has paid his dues to the creditors of the defunct corporation, as he agreed to do when he became a stockholder in it, or that he has a set-off to their claim. His answer is concerned with the alleged invalidity of the Lucas county adjudication, upon the ground already fully discussed, that he was attempted to be sued in that jurisdiction by the initial letters of his first and second names and that the action is barred by the statute of limitations. None of these, it is to be observed, touches the matter of the defendant's real obligation to the creditors of his company, to enforce which both actions were brought.

As to the first of these defenses our views are already given.

In regard to the misnomer assigned, we think there is nothing in the point.

As to the statute of limitations, the court below properly disregarded it, in our opinion.

The petition before us does not in terms assign either of these two things as matter of error, unless they come within the complaint of ''other errors.'' But we mention them as being by that possibility in this case. As already narrated, at the conclusion of all the evidence the defendant moved ''for judgment on the undisputed evidence,'' but with a named reservation of his ''rights to go to the jury upon the evidence if the court holds against me.''

The motion was then overruled. The plaintiff then made a motion for a judgment in his favor on the same ground, and also moved for a directed verdict.

Before this motion was acted on by the court the defendant presented certain instructions in writing, and requested that these be given in charge to the jury before argument. These amounted to the direction of a verdict for the defendant. They were refused and there was no argument.

The court then directed a verdict for the plaintiff. All proper

exceptions were saved, and a motion for a new trial was there-after made and denied.

The motion by the defendant for a judgment on the evidence in effect submitted the issue to the court to be found, nor did the attempted reservation, without more, withdraw the submission, and the court found the issue to be with the plaintiff.

If our view of the law as already expounded is correct; if the attempted constructive service was inert, taking no legal right from defendant and fastening no liability upon him, then the trial court was right in directing the jury to return a verdict for the plaintiff.

If, on the other hand, our view in this respect is mistaken and the assumed finding of the Lucas county court as to such service operated as a judgment against the defendant, it still remains an integral part of that judgment until reversed in that cause or some cause having such reversal for its direct purpose. The present action is not of that nature.

Upon either footing the defendant must fail.

We are quite aware that in somewhat laboriously reaching this conclusion the fact that we have in words paid so little attention to the very voluminous briefs filed in the case, will be thought a cause of grief if not grievance to the compilers. With cyclonic energy and with the zeal of crusaders, with characteristic industry and with the learning which has had the effect that Festus imputed to Paul, the utmost corners of the judicial earth have been ransacked for law, and from all the immense armories of legal resource authorities have been marshaled before us in the wildest profusion.

> "Mastering the lawless science of our law—
> That codeless myriad of precedent,
> That wilderness of single instances."

It has not quite been "Love's Labor Lost," for we have examined these with attention always, and with those parts of some of the briefs which in wealth of language transcend the picturesque at times and approach the frontiers of the lurid,

the court has been affected even to admiration. The very prod-igality of cases cited has precluded a more particular allusion to them in the course of this opinion. But they have been con-sidered, and the result of the consideration is embodied in what we have now said. So much is due to the labor and erudition of counsel in the case.

We have heard in one of the briefs the tocsin sounded that this case may "pathfind its way" to a higher court. The outcry has no terrors for a court whose humble but sole ambition is to be right, even at the expense of being set right by any tribunal having authority to do that. Certainty of being right is not the monopoly of any mortal. We aspire only to that "learned and modern ignorance" which the great historian of Rome's fall characterizes as the mark of great minds.

The result of our consideration is that we find no intervening error of substance in this record, injurious to the rights of the defendant, and we are unable to say that substantial justice has not been done in the case.

The judgment complained of is, therefore, affirmed.