NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2795
_____

UNITED STATES OF AMERICA

v.

RAFFAEL ROBINSON,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-14-cr-00623-004)
U.S. District Judge:  Honorable C. Darnell Jones, II

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 7, 2024

_____

Before:  SHWARTZ, CHUNG, and AMBRO, <u>Circuit Judges</u>.

(Filed:  March 8, 2024)

_____

OPINION*

_____

_____

    * This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, Circuit Judge.

Raffael Robinson appeals his sex trafficking conviction and sentence. For the following reasons, we will affirm.

I

For four years, Robinson recruited women, collected money, ran errands, and provided security for a business in which women were forced to engage in prostitution. The business operated in a strip club and a nearby house in which Robinson periodically lived. Kevino Graham, the leader of the operation, paid him for these services.

The evidence revealed that Graham and his associates brutalized some of the women. On one occasion, Robinson acted as a "lookout" while Graham and Brian Wright, another participant in the venture, raped and tortured one of the sex workers, S.P., for hours. App. 447. Robinson "would pop in [and out]" of the room, then "go outside to see if he could hear [S.P.'s] screams." App. 517. On a separate occasion, Robinson restrained S.P. to keep her from "moving and kicking," App. 478, while Graham and Wright beat her and repeatedly dunked her head in a bucket of water and bleach, App. 711.[1] Graham also ordered S.P. to have sex with Robinson, which he reluctantly did[2] because "he was intimated [by Graham,]"[3] App. 484.

---

[1] Another time, Robinson witnessed Graham "smashing [S.P.'s] face into the carpet with a pillow really hard to [the point] where [she] couldn't breathe." App. 486. Despite S.P.'s cries to Robinson for help, he did not intervene for fear of "get[ting] beat up [by Graham,] too." Id.

[2] Although they had sex, S.P. did not view the incident "like [a] . . . rape[]" because she believed Robinson was "a victim too." App. 534.

[3] S.P. testified that Graham abused Robinson, once stabbing him with a knife.

2

The grand jury returned a multiple count indictment naming four defendants, including Robinson and Graham, charging them with sex trafficking by force or coercion, and attempting to do so, in violation of 18 U.S.C. §§ 1591, 1594(a), and 2. Robinson was charged in one count. Before trial, Robinson moved for a severance, which the District Court denied without explanation. Two defendants thereafter pleaded guilty, and Graham and Robinson proceeded to trial.

Victim V.F. took the stand first, but none of her testimony involved Robinson. At one point, she began to cry, prompting Robinson's counsel to renew this severance motion, citing "prejudicial spillover[.]" App. 182. The District Court explained that V.F. had not yet mentioned Robinson, and counsel conceded that her motion was "premature" and said she would "bring it later," although she never did. App. 182-83. The jury then heard evidence from other witnesses, including S.P. and another victim, the latter of whom did not identify Robinson as a perpetrator of any violent actions against her.

During closing arguments, the Government (1) mischaracterized evidence pertaining to Robinson's solicitation activities, and (2) recounted in graphic detail the abuse the victims experienced.

After the jury returned its guilty verdict against Robinson, a Presentence Report ("PSR") was prepared. The PSR recommended a base offense level of 37, consisting of an offense level of thirty under U.S.S.G. § 2A3.1(a)(2), increased by four levels under § 2A3.1(b)(1) because the offense involved aggravated sexual abuse, as described in 18 U.S.C. § 2241(a) or (b), and by three levels under § 2A3.1(b)(4) because of the injuries S.P. sustained. Robinson's category I criminal history resulted in a Guidelines range of

3

210 to 262 months' imprisonment. Robinson objected to the enhancements. The Court

overruled the objections.

At the final sentencing hearing, the Court heard argument on Robinson's request

for a role reduction and downward variance. In support of the reduction, Robinson relied

on an out-of-circuit case. Although the Court did not explicitly state that the request for a

role reduction was denied, it deemed that case inapt and said that it would consider

Robinson's culpability in evaluating his request for a variance. The District Court

adopted the PSR's proposed total offense level of thirty-seven, and

then denied Robinson's motion for a downward variance upon considering the totality of

circumstances. At the conclusion of the hearing, the Court imposed a sentence of 210

months' imprisonment.

Robinson appeals. He raises arguments concerning (1) the denial of severance, (2)

the Government's statements during summations, (3) a jury instruction, (4) the

application of the sentencing enhancements, and (5) the denial of his request for a role

reduction. We address each in turn.

## II[4]

"A defendant seeking a new trial due to the denial of a severance motion must

show that the joint trial led to clear and substantial prejudice resulting in a manifestly

unfair trial." United States v. John-Baptiste, 747 F.3d 186, 197-98 (3d Cir. 2014)

---

[4] The District Court had jurisdiction over this case under 18 U.S.C. § 3231, and we have jurisdiction 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

We review a district court's denial of a motion for severance for abuse of discretion. United States v. Walker, 657 F.3d 160, 170 (3d Cir. 2011).

4

(internal quotation marks and citation omitted).  This is a heavy burden, United States v. Heatherly, 985 F.3d 254, 271 (3d Cir. 2021), and "[i]t is not enough to show that severance would have increased the defendant's chances of acquittal" or that "the district court abused its discretion[,]" United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992) (citations omitted).  Moreover, that certain evidence pertains to one defendant and not another is not itself substantially prejudicial, particularly when the district court (1) had sound reason to think that the jury could compartmentalize the evidence offered against each defendant, Walker, 657 F.3d at 170-71, and (2) instructed the jury to separately consider the evidence against each defendant, Zafiro v. United States, 506 U.S. 534, 541 (1993); see also Heatherly, 985 F.3d at 271 (rejecting child pornography defendant's argument that a video depicting the sexual abuse of a child implicating only his co-defendant caused substantial prejudice, emphasizing that "the jury would have no difficulty keeping evidence from each defendant's computer separate" and "the court gave a proper [] instruction . . . [to] the jury to consider the evidence against each defendant and on each count separately").

When Robinson moved for severance pre-trial,[5] the case involved three counts (each pertaining to a different victim) and four defendants.  Robinson's sole charge concerned his conduct against S.P.  The trial ultimately involved only two defendants, and S.P.'s testimony clearly distinguished between their conduct.  Given the straightforward though horrific nature of the case, the evidence was segregable.  Indeed,

---

[5] Robinson's counsel also raised a second severance motion following V.F.'s testimony, but she withdrew it as premature and never renewed it.

the victims were precise in their descriptions about the acts each defendant engaged in. This provided the District Court with a basis to conclude that the jury was capable of compartmentalizing the evidence for each defendant. The Court further protected against prejudicial spillover by instructing the jury to "separately consider the evidence against each defendant[,] . . . return a separate verdict for each defendant[,]" and "decide whether the Government . . . proved that particular defendant guilty beyond a reasonable doubt." App. 1179.[6] We assume that jurors follow instructions, Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985), and have no reason to believe that they did not here.

Accordingly, the District Court did not abuse its discretion in denying Robinson a severance.[7]

## III[8]

Robinson asserts that the District Court should have granted his motion for a new trial because the Government's summation included improper arguments constituting prosecutorial misconduct. In evaluating whether such statements warrant a new trial, we ask whether they, "in the context of the entire trial, were sufficiently prejudicial to violate [the] defendant's due process rights." United States v. Green, 25 F.3d 206, 210 (3d Cir. 1994) (internal quotation marks and citation omitted). Although the Government may

---

[6] The Court further instructed the jury that its "decision on one defendant, whether guilty or not guilty, should not influence your decision on the other defendant. Each defendant should be considered individually." App. 1179.

[7] Even assuming the Court erred by denying Robinson severance without an explanation, such an error was harmless because Robinson fails to show that the decision clearly and substantially prejudiced him.

[8] Because Robinson did not object to prosecutorial misconduct at trial, we review for plain error. Gov't of the V.I. v. Mills, 821 F.3d 448, 456 (3d Cir. 2016).

not "cross the line and invite the jury to render a decision on grounds of bias, passion, prejudice, or sympathy," Mills, 821 F.3d at 458 (3d Cir. 2016), it has "considerable latitude . . . to argue the evidence and any reasonable inferences that can be drawn from that evidence," United States v. Werme, 939 F.2d 108, 117 (3d Cir. 1991).

Robinson raises several concerns, but none entitle him to relief. First, the Government mistakenly stated in closing that Robinson distributed a specific business card when describing Robinson's role in promoting the prostitution business. During deliberations, the jurors asked to see a copy of that card, which prompted the Court to advise them that there was "no testimony about what [Robinson] handed out specifically." App. 1219. This cured any prejudice that may have resulted from the Government's misstatement.

Second, during the Government's rebuttal summation, it used the word "rape" to refer to Graham's command that Robinson have sex with S.P. App. 1141. Immediately thereafter, the Government reminded the jury that S.P. testified that she did not view intercourse with Robinson as a rape. The Government highlighted these events and used the word "rape," not to accuse Robinson of rape, but rather to (1) show that S.P. was precise as to whom she blamed for the brutality she faced and (2) remind the jury that S.P. testified that Graham forced her to perform unwanted sexual acts, including with Robinson, as a means to punish and maintain control of her. Therefore, the use of the word "rape" during the rebuttal did not prejudice Robinson.

Third and relatedly, the Government's statement that the victims deserved "equal protection under law," App. 1090, was not an attempt to cause the jury to convict

7

Robinson on an improper basis. Rather, the Government simply reminded the jury that all parties, including the victims, were entitled to legal protection, notwithstanding their illicit sex work.

Fourth, the Government made comments such as "[s]how [the victims] that their gruesome experiences mattered" and "[t]his is the day of reckoning." App. 1091. Robinson contends that these statements improperly encouraged the jury to seek retribution. However, immediately after these remarks the Government reminded the jury to ground its verdict in facts and law, thus cautioning them against deciding on retributivist grounds. Accordingly, taken in context, the statement did not prejudice Robinson.

Finally, the Government claimed that just as "[t]here was no choice" for the victims to escape the "climate of fear and culture of violence," the jury had "no choice based on this evidence and this law but to find both defendants guilty." App. 1147-48. Despite its colorful phrasing, this statement conveyed the message that the evidence and law compelled a guilty verdict, which is a proper argument.

In short, the Government's statements during summation were based on the evidence and reasonable inferences therefrom, and none violated Robinson's due process rights.

IV[9]

---

[9] In his pro se post-trial motion, Robinson asserted that his counsel was ineffective for, among other things, failing to object to the jury instructions language. Because the claim of ineffective assistance of counsel before us concerns the wording of a jury

8

Robinson argues that his counsel was ineffective by failing to object to one aspect of the jury instructions. While ineffectiveness claims are not typically addressed on direct appeal, we examine the argument here because the record is sufficiently developed. United States v. Headley, 923 F.2d 1079, 1083 (3d Cir. 1991). To prevail on an ineffective assistance claim, Robinson must establish that (1) his "counsel's representation fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Robinson argues that his trial counsel erred when she agreed to a jury instruction that he claims mistakenly permitted the jury to find him guilty under 18 U.S.C. § 1591(a)[10] for "receiving anything of value for participation in a [human trafficking]

_____

instruction (and thus implicates no fact finding), we review counsel's failure to object claim de novo. United States v. Washington, 869 F.3d 193, 204 (3d Cir. 2017).

[10] Relevant here, a person violates § 1591(a) when he knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . ., or any combination of such means will be used to cause the person to engage in a commercial sex act, . . . shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a)(1)-(2).

9

venture," even if the Government failed to prove he knew where the money came from.[11]

App. 1182.

"[W]hen we consider jury instructions, we consider the totality of the instructions and not a particular sentence or paragraph in isolation." United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995). Here, the District Court explained that § 1591(a) "prohibits certain conduct involving knowingly recruiting, enticing, . . . or maintaining . . . a person or benefiting financially or by receiving anything of value. . . from a venture that engages in such an act." App. 1180. The Court also read aloud the full text of § 1591(a)(1)-(2), further making clear to the jury that it could convict Robinson for receiving money from Graham only if Robinson knew of the money's illicit source. Thus, even though the

---

[11] Specifically, in outlining the requirements of § 1591(a)(1) and (a)(2), the Court explained that the Government had to prove
> either that[,] [under (a)(1),] the defendant knowingly transported or recruited or enticed or harbored or provided or obtained or maintained a person by any means, or[,] [under (a)(2),] that the defendant benefited financially or by receiving anything of value for participation in a venture which recruited, enticed, harbored, transported, provided, obtained or maintained by any means a person.

App. 1182. The Court continued:
> The first element of the offense which the [G]overnment must prove beyond a reasonable doubt may be proved in one of two ways. First, [under (a)(1),] the [G]overnment may prove beyond a reasonable doubt that a defendant knowingly transported or recruited or enticed or harbored or provided or obtained or maintained the victim by any means . . . .
> The first element of the offense may also be proved a second way, [under (a)(2),] which is if the [G]overnment proves beyond a reasonable doubt that the defendant benefitted, financially or by receiving anything of value, from participation in a venture which recruited, enticed, harbored, transported, provided, obtained or maintained the victim by any means.

App. 1183. In both the foregoing statements, the Court did not restate that the knowing requirement applied to both (a)(1) and (a)(2), but for the reasons stated herein, this did not render the instruction erroneous.

Court did not repeat the word "knowing" each time it referred to a way a defendant could violate the statute, "the totality of the instructions," Coyle, 63 F.3d at 1245, informed the jury of the knowledge element. Counsel therefore did not err by not objecting to them.[12]

## V[13]

Robinson challenges two sentencing enhancements under U.S.S.G. § 2A3.1 and the denial of a role reduction under § 3B1.2. We address each in turn.

## A

U.S.S.G. § 2G1.1 provides that U.S.S.G. § 2A3.1 (criminal sexual abuse) governs violations of 18 U.S.C. § 1591(b)(1) that involved conduct described in 18 U.S.C. § 2241(a). U.S.S.G. § 2G1.1. Section 2A3.1 imposes a base offense level of thirty and, like § 2G1.1, instructs courts to determine if the offense involved conduct described in 18 U.S.C. § 2241(a). If so, the sentencing court is instructed to increase the base offense level by four. Thus, calculating the Guidelines range pursuant to § 2A3.1 and adding the four-point enhancement are appropriate when a defendant, among other things,

---

[12] Even if we concluded that counsel should have objected, the lack of an objection did not prejudice Robinson, and was thus harmless, because the record clearly shows that he knew about the prostitution business and that his compensation was tied to it. See Neder v. United States, 527 U.S. 1, 2 (1999) (noting that "improperly instructing the jury on [an] element" of an offense is "an error that is subject to harmless-error analysis").

[13] We review a district court's "application of the Guidelines to facts for abuse of discretion and its factual findings for clear error." United States v. Thung Van Huynh, 884 F.3d 160, 165 (3d Cir. 2018) (internal quotation marks and citation omitted). "But where," as here, "the Guidelines 'set[] forth a predominantly fact-driven test,' these two standards become indistinguishable, because we would find that the Court had 'abused its discretion in applying the enhancement based on a particular set of facts only if those facts were clearly erroneous.'" Id. (quoting United States v. Richards, 674 F.3d 215, 223 (3d Cir. 2012)).

"knowingly cause[d] another person to engage in a sexual act … by using force against that person." 18 U.S.C. § 2241(a). Section 2A3.1(b)(4) further instructs courts to increase the offense level by three if the victim sustains bodily injuries that fall between "permanent or life-threatening" and "serious[.]" U.S.S.G. § 2A3.1(b)(4).

Robinson's role in S.P.'s abuse justified the District Court's application of both enhancements. Robinson acted as a lookout while Graham and Wright, over the course of many hours, tied S.P. naked to a chair, shaved off her eyebrows and hair, raped her with various objects, choked her, and beat her to the point that her face was unrecognizable. App.445. Robinson "was in the room [where the attack occurred] part of the time. Then he would pop in at another time, [and] then he would go outside to see if he could hear [S.P.'s] screams." App. 517. On another occasion, Robinson restrained S.P.'s arms and legs to keep her from moving while Graham and Wright beat her and repeatedly submerged her head into a bucket of water and bleach "until [she] basically pass[ed] out." App. 477. Finally, Robinson knew of other acts of violence perpetrated against S.P. and, as noted above, knew that S.P. had sex with, at the very least, Robinson himself out of fear of Graham and at Graham's command. This evidence, which Robinson does not here contest, could support a conclusion that Robinson knew that the assaults he facilitated were part of an overall climate of violence used to instill in S.P. an extreme fear that made her feel she had no choice but to continue as a sex worker and that the assaults resulted in serious injury.

Accordingly, the District Court did not abuse its discretion when it applied the enhancements.

12

B[14]

The District Court also acted within its discretion in denying Robinson a role reduction.[15] See United States v. Isaza-Zapata, 148 F.3d 236, 238 (3d Cir. 1998) ("The district courts are allowed broad discretion in applying U.S.S.G. § 3B1.2, and their rulings are left largely undisturbed").

U.S.S.G. § 3B1.2 provides a reduction of two to four levels if the defendant was a "minor" or "minimal" participant in the criminal activity. U.S.S.G. § 3B1.2. "[W]e consider a number of factors for determining whether a defendant is entitled to a decrease for being a minimal or minor participant in a conspiracy," including: "(1) the defendant's awareness of the nature and scope of the criminal enterprise; (2) the nature of the defendant's relationship to the other participants; and (3) the importance of the defendant's actions to the success of the venture." United States v. Brown, 250 F.3d 811, 819 (3d Cir. 2001).

---

[14] We review factual determinations concerning the denial of a role reduction for clear error," United States v. Carr, 25 F.3d 1194, 1207 (3d Cir. 1994) (citations omitted), and "the ultimate decision whether to grant or deny a defendant's motion to reduce sentence . . . for abuse of discretion," United States v. Mateo, 560 F.3d 152, 154 (3d Cir. 2009).

[15] Although the District Court did not explicitly say that it was denying Robinson's role-reduction request, its other statements show that it did. During sentencing, the Court (1) deemed Robinson's out-of-circuit caselaw inapt; (2) stated that it would consider the degree of Robinson's involvement in evaluating his request for a variance; (3) said that it had "heard enough" on the issue, App. 1314; (4) adopted the PSR's proposed offense level of thirty-seven—which did not include a role reduction—"subject to the [its] ruling on what counsel ha[d] just mentioned in his most recent argument," App. 1321; and (5) imposed a sentence within the Guidelines range for that offense level. The Court therefore denied the application and committed no procedural error.

The record shows that Robinson's involvement in the venture, including periodically living at the house where some of the activity occurred "happened over a period of years." App. 1340-41. Likewise, although Robinson was not the leader, he performed various jobs central to the enterprise, including providing security, collecting money from customers, running errands for the women, helping to recruit new sex workers, and participating in acts of violence against S.P. that maintained her submission and compliance her to continue prostitution activities. Therefore, the Court acted within its discretion in denying Robinson a role reduction.

## VI

For the foregoing reasons, we will affirm.