**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3307
_____

UNITED STATES OF AMERICA

v.

JAKE KELLY,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 04-cr-00605-001)
District Judge:  Honorable Jan E. Dubois
_____

Submitted Under Third Circuit LAR 34.1(a)
January 11, 2011
_____

Before: SCIRICA, BARRY and VANASKIE, Circuit Judges

(Opinion Filed:  January 20, 2011)
_____

OPINION
_____


BARRY, Circuit Judge

        A jury found Jake Kelly guilty of felon in possession of a firearm, in violation of

18 U.S.C. § 922(g)(1). Kelly contends that the District Court erred (1) in denying his

motion for a new trial under Fed. R. Crim. P. 33, (2) in its ruling on a motion in limine regarding his exculpatory statement, and (3) in instructing the jury. We will affirm.

## I.    BACKGROUND

### A.    Facts

Around 1:00 a.m. on May 1, 2004, Jake Kelly was sitting at the bar of Cafe Breezes, a neighborhood hangout on the first floor of a row house in West Philadelphia. After two undercover officers from the Philadelphia Police Department canvassed the bar for obvious criminal activity, approximately twenty law enforcement officers – from the Philadelphia Citywide Vice Enforcement Unit, Philadelphia Department of Licenses and Inspections, Pennsylvania State Police Liquor Control Enforcement, and the Narcotics Strike Force – entered Cafe Breezes to do an "open inspection." (R. at 305.)

Philadelphia Police Officer Donna Stewart was at Cafe Breezes during the inspection to provide backup for the undercover and plainclothes officers who were checking the identification of the bar's customers and ensuring that the bar complied with liquor regulations. Stewart also watched the customers to make sure that no one discarded any illegal items. Other than when she had a brief conversation with her partner, Stewart stood by the front door of the bar, behind Kelly, who sat at the corner of the "L"-shaped bar, on the short side of the "L." Victor Jones, Kelly's friend, sat around the corner of the "L," and the two undercover police officers sat next to Jones.

Kelly caught Stewart's attention because he looked over his shoulder at her and

watched the other officers; he also "started to sweat" and "was fidgeting on his barstool." (*Id.* at 349.) Stewart briefly left her position and told her partner that Kelly made her nervous. When she returned, she noticed that Kelly was sweating profusely and was "crunched over in his seat with his hands below the bar." (*Id.* at 350.) After another police officer asked a different customer for his identification, Kelly announced that he had *his* identification and "reached quickly towards his back." (*Id.* at 351.) Stewart put her hand on Kelly's shoulder, grabbed his wrist, and told him to stand up. As he stood, she saw a gun fall from his lap and down his left leg, and she yelled out "'Gun.'" (*Id.* at 352.) Other officers put handcuffs on Kelly while Stewart picked up the gun from the floor. The gun was loaded with eleven rounds of ammunition, one of which was in the chamber, and the gun's serial number was obliterated. Kelly claims that as he was being arrested, he told the police that someone threw the gun at him.

After the verdict, Kelly's newly appointed attorney was told by Kelly's girlfriend that Jones claimed that the gun at issue was not actually Kelly's gun. In contrast to the testimony of law enforcement officers at trial, Jones said that Cafe Breezes was crowded that night, and testified at a post-trial hearing that right before Kelly was arrested, someone in the crowd brushed into Jones and put a gun in his lap. Jones then pushed the gun off *his* lap and onto the floor. He was "pretty sure" that the gun Stewart picked up was the one that he pushed off his lap. (*Id.* at 686.) Jones did not reveal this series of events to anyone until he learned that Kelly had been convicted. Jones saw Kelly briefly

"once or twice" between Kelly's arrest and his conviction, but they never discussed this case, and Jones thought it had been resolved. (*Id.* at 706.)

## B. Procedural History

The District Court denied Kelly's Rule 33 motion for a new trial, but granted his motion for a new trial based on Jones' testimony. The government appealed, and we reversed because Kelly had not shown that he exercised reasonable diligence in discovering Jones' testimony *before* trial. *United States v. Kelly*, 539 F.3d 172, 186 (3d Cir. 2008) ("Sitting on one's hands and waiting for a known eyewitness to come forward with potentially exculpatory information (or potentially inculpatory information from Jones's perspective) cannot be considered – by any definition – reasonable diligence."). On remand, the District Court sentenced Kelly below the Guidelines range, to the mandatory minimum sentence of 180 months of imprisonment. Kelly timely appealed.

## II. ANALYSIS[1]

### A. Motion for New Trial Under Rule 33

We review for abuse of discretion the District Court's denial of Kelly's Rule 33 motion. With respect to that motion, the District Court "exercises its own judgment in assessing the Government's case" and does *not* read the evidence in the light most favorable to the government, but the Court may order a new trial pursuant to Rule 33 "only if it believes that there is a serious danger that a miscarriage of justice has occurred

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

4

– that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (internal quotation marks omitted).

Kelly contends that at trial there was "no reliable evidence that [he] actually 'possessed' the firearm" because he did not "'control'" it. (Appellant's Br. at 13.) Stewart testified, however, that she saw Kelly hunched over with his hands in his lap and then saw a gun drop from his lap when she asked him to stand up. The jury clearly found Stewart to be credible, and the District Court reasonably concluded that any inconsistencies in Stewart's testimony did not "constitute the type of exceptional circumstances that would warrant a new trial in Kelly's case." (R. at 25.) The Court did not abuse its discretion in denying the Rule 33 motion, as the jury could have reasonably found from Stewart's testimony that Kelly "possessed" the gun. Stewart's testimony was not, moreover, clearly incredible or physically impossible, *see United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001), and there is not a "serious danger" that Kelly is innocent.[2]

### B.    Motion in Limine

Kelly next argues that the District Court erred when it "preliminarily ruled" that he could not elicit evidence at trial of his statement as he was being arrested that someone threw the gun at him. (Appellant's Br. at 18.) Before trial, the government moved to

---

[2] Kelly maintains that we should take into account Jones' post-trial revelation regarding the origin of the gun, but the government argues that that would be improper given that we previously rejected Kelly's motion for a new trial based on that evidence.

exclude the statement as hearsay, and Kelly argued that the Court should nonetheless

admit it as a present sense impression or excited utterance. At that point, however, there

was no evidence in the record regarding the period of time that passed between the

inciting incident – the gun falling from Kelly's lap and his apparently immediate arrest –

and Kelly's statement. Because timing is critical to both exceptions that Kelly raised, the

Court "defer[red] ruling" on the motion and said it would "see how the facts play[ed]

out." (R. at 87-88.) The Court "put[] the burden on" defense counsel to "address the issue

as [he saw] fit." (*Id.* at 89.) As Kelly admits, defense counsel did not raise this issue again

during the trial, and the District Court denied the government's motion in limine as moot

after the close of testimony. We review that decision for plain error. *Walden v. Georgia-*

*Pacific Corp.*, 126 F.3d 506, 519-20 (3d Cir. 1997).

Kelly maintains that the Court "abused its discretion[3] by constraining [him] from

eliciting the statement," but that argument misses the mark. (Appellant's Br. at 19.) The

Court did not actually exclude Kelly's statement but rather waited to resolve the issue and

denied it as moot only after the trial testimony had concluded and the issue had not been

pressed. Kelly claims that his trial counsel "[o]bviously . . . felt constrained by the District

Court's preliminary ruling." (*Id.*) There is nothing to support that claim, and the Court did

not commit plain error when it delayed ruling on the government's motion and then

We need not resolve this dispute because consideration of Jones' testimony would not alter our conclusion that the District Court did not abuse its discretion on this issue.

[3] Under *Walden*, we review for plain error. We would, however, reach the same conclusion even if abuse of discretion was the appropriate standard.

denied the motion as moot after defense counsel failed to raise the issue at any time during the trial.

### C. Jury Instructions

Kelly also argues that the District Court erred when it did not give the Third Circuit Model Jury Instruction that "'[m]ere proximity to the firearm or mere presence on the property where it is located or mere association with the person who does control the firearm or [the] property is insufficient to support a finding of possession.'" (Appellant's Br. at 23 (quoting an optional portion of Third Circuit Model Jury Instruction No. 6.18.922G-4, with the second alteration in the Model Instruction).) Kelly argues that "[g]iven the evidence presented at trial, this instruction was clearly appropriate." (Appellant's Br. at 23.) We do not, however, review the instruction for whether it was appropriate. Rather, because Kelly did not raise this issue in the District Court, we review the instruction for plain error.

In evaluating whether the District Court committed plain error, we determine "'whether, in light of the evidence presented at trial, the failure to instruct had a prejudicial impact on the jury's deliberations, so that it produced a miscarriage of justice.'" *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004) (quoting *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir.1993)). There is no suggestion in the record that the fact that the Court did not give the "mere proximity" instruction had any impact, much less a prejudicial one, on the jury's deliberations. The Court gave the jury lengthy

instructions as to the definition of knowing possession of a firearm and that "[t]o possess means to have something within a person's control" and that "[t]o act knowingly, a defendant must be conscious and aware of his actions . . . he must realize what he is doing and not act because of ignorance, mistake or accident." (R. at 535-36.) Assuming, as we do, that the jury followed these instructions, it could not have found Kelly guilty if he was only in "mere proximity" to the firearm. There is no miscarriage of justice here, and the District Court did not commit plain error when it did not give the jury the "mere proximity" instruction.

III.    CONCLUSION

We will affirm the judgment of conviction.