**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-1492
_____

UNITED STATES OF AMERICA

v.

JAKE KELLY,
                    Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-04-cr-00605-001)
District Judge:  Honorable Jan E. DuBois

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 16, 2016

Before:  CHAGARES, GREENAWAY, JR., and RESTREPO, Circuit Judges.

(Filed: October 5, 2016)
_____

OPINION*
_____

CHAGARES, Circuit Judge.

　　Jake Kelly appeals from the District Court's order entered on November 24, 2014,

denying his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

On appeal, Kelly raises three issues: (1) whether the District Court applied the correct standard for demonstrating prejudice under Strickland v. Washington, 466 U.S. 668 (1984); (2) whether the District Court previously found that Kelly had met a more stringent "probability-of-acquittal" standard, and thus, under the law of the case doctrine, he necessarily met the lower prejudice standard under Strickland; and (3) whether the District Court should make certain credibility findings and decide in the first instance whether trial counsel's performance was deficient under Strickland. For the reasons that follow, we will vacate the District Court's order and remand for proceedings consistent with this opinion.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. Kelly is currently serving a mandatory minimum 180-month sentence of incarceration for one count of possession of a firearm by a convicted felon. He was arrested during an "open inspection" of Café Breezes, a bar in Philadelphia, around 1:00 a.m. on May 1, 2004. During the inspection, a group of approximately nineteen police officers entered Café Breezes with the purpose of checking whether the bar maintained the proper licenses and to determine whether underage drinking, narcotics sales, or other criminal activity was taking place. Kelly, one of the bar's patrons, was sitting on a bar stool near the front door. At some point during the inspection, a gun fell to the floor next to Kelly. He was arrested and charged with possession of a firearm by a convicted felon.

At trial, the Government's only evidence as to Kelly's possession of the gun was the testimony of police officer Donna Stewart. Officer Stewart testified that, during that

2

inspection, she saw a gun fall from Kelly's lap when he stood up from his bar stool. Officer Stewart, who was standing behind Kelly, noticed him "sweating," "fidgeting," and "leaned over, crunched over in his seat with his hands below the bar where [she] couldn't see them." Appendix ("App.") 136, 149-50. She then walked to the other side of the bar to speak to another officer. When Officer Stewart returned to her spot behind Kelly, she saw him reach "very quickly towards his waist." Id. at 139. At that point, Officer Stewart "stepped forward, . . . put [her] hand on [Kelly's] shoulder and grabbed his right wrist." Id. at 139. She told him, "Nobody was speaking to you, nobody asked you for your ID, place your other hand on the bar." Id. It was then, she testified, that Kelly stood up and "the gun fell from his lap and down along his left leg and hit the metal chair rail." Id.

Kelly's defense counsel did not call any witnesses. On July 21, 2005, the jury found Kelly guilty of possession of a weapon by a convicted felon.

In October 2005, Kelly, represented by different counsel, filed a motion for a new trial based on newly discovered evidence.[1] That new evidence consisted of statements allegedly made by Victor Jones, who had been sitting directly next to Kelly at Café Breezes on the night of his arrest. Jones was not interviewed by either the Government or the defense prior to Kelly's trial. But on or about July 28, 2005, after hearing that

---

[1] Kelly also sought a new trial on the basis of ineffective assistance of counsel for failing to interview and present witnesses. The District Court appropriately denied that claim without prejudice, indicating that such claims were more appropriately brought through a § 2255 motion. See App. 563-64; United States v. Gaydos, 108 F.3d 505, 512 n.5 (3d Cir. 1997) ("We have emphasized our preference that claims of ineffectiveness of counsel be raised in a collateral proceeding under 28 U.S.C. § 2255.").

3

Kelly had been convicted, Jones allegedly told his friend Kemahsiah Gant that he, and not Kelly, actually "had the gun" that night and that "[w]hen the police came in he got nervous and threw it down on the floor." App. 394.[2] Gant, who is friends with Kelly's girlfriend Jacqueline Cephas, waited three weeks before telling Cephas about Jones's comments. Cephas then informed Kelly's defense attorney.

At a post-trial evidentiary hearing based on this new evidence, the District Court heard testimony from four witnesses: Jones, Gant, Cephas, and police officer Clarence Clark. Jones testified as to both his recollection of the night of Kelly's arrest and his later conversation with Gant. Jones testified that his barstool was at the end of the long end of the bar, and that Kelly was seated directly to his left at the short end of the bar. Jones stated that, during the inspection, someone behind him "brushed into [him]" and put a gun in his lap. Jones testified that he pushed the gun off his lap, and it fell onto the floor. He believed that the gun he pushed off his lap was the gun for which Kelly was convicted of possessing. He did not initially tell the police that he believed that Jones was wrongly arrested because he "didn't want to have anything to do with that."[3] App. 500.

---

[2] Gant later testified at Kelly's post-trial evidentiary hearing on the new evidence. At that hearing, Gant recounted her initial conversation with Jones. Gant testified that Jones told her that "it wasn't [Kelly's] gun" and that "[Jones] had the gun and threw it on the floor." App. 423.

[3] Jones also testified that, because he saw Kelly after his arrest, he "assumed [the case against him] was over." App. 519. After learning about Kelly's conviction and sentence, and after being contacted by Kelly's counsel, Jones decided that testifying at the post-trial hearing "probably was the right thing to do." Id. at 520.

4

Based on the post-trial testimony and the parties' submissions, the District Court granted Kelly's motion for a new trial based on the newly discovered evidence.[4] But a panel of our Court reversed. See United States v. Kelly, 539 F.3d 172 (3d Cir. 2008) ("Kelly I"). In Kelly I, we held that Kelly failed to demonstrate due diligence — a necessary requirement to be granted a new trial on the basis of newly discovered evidence.[5] We held that the diligence inquiry requires a district court to consider "whether the evidence at issue could have been discovered before or at the time of trial with the exercise of reasonable diligence on behalf of the defendant and/or his counsel." Kelly I, 539 F.3d at 182. Based on the pre-trial record for Kelly's case, our Court found "absolutely no evidence — nor allegation — of pretrial diligence on Kelly's behalf." Id. at 183. "The record could not be more clear that Kelly made no effort to speak with

---

[4] Generally, a defendant seeking a new trial on the basis of newly discovered evidence must meet five requirements:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976).

[5] In Kelly I, we did not reach the merits of whether Kelly had met the probability-of-acquittal requirement for a new trial because our determination that Kelly failed to meet the diligence requirement was dispositive.

We also emphasize that our holding in Kelly I that Kelly was not reasonably diligent does not defeat a later ineffective assistance of counsel claim. Indeed, a lack of due diligence by defendant's counsel would support, and not hinder, a defendant's ineffective assistance of counsel claim.

Jones — despite seeing him anywhere from one to twenty times after the arrest . . . . [S]uch inaction simply does not qualify as reasonable diligence." Id.

Following remand, the District Court sentenced Kelly to 180 months of imprisonment, and our Court affirmed the conviction and sentence. United States v. Kelly, 406 F. App'x 676 (3d Cir. 2011) (not precedential) ("Kelly II"). Kelly subsequently filed his § 2255 motion alleging ineffective assistance of counsel. Kelly claims that he was provided with ineffective assistance of counsel based on his trial counsel's failure to (1) interview prospective defense witnesses; (2) offer evidence of defendant's post-arrest statement;[6] (3) otherwise conduct a reasonable investigation; and (4) request a "mere presence" jury instruction. The District Court denied the motion, and Kelly timely appealed.

II.

The District Court had jurisdiction over Kelly's collateral petition under 28 U.S.C. §§ 1331 and 2255, and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a).[7]

---

[6] At some point after the gun fell to the floor, Kelly told the officers that "someone threw the gun at [him.]" App. 551. The District Court granted the Government's motion in limine to exclude that statement. The District Court's order, however, was a preliminary ruling that provided an opportunity for the defense to develop evidence concerning the duration of time between when the statement was made and when the gun was allegedly thrown, which could have supported admission of the statement as an excited utterance or a statement of present sense impression. Kelly's trial counsel never revisited this issue to seek admission of that statement. See id.

[7] On November 10, 2015, a panel of our Court granted Kelly's request for a certificate of appealability under 28 U.S.C. § 2253(c)(1) on the questions whether trial counsel was ineffective for failing to interview prospective defense witnesses and for failing to conduct a reasonable investigation (claims 1 and 3 in his § 2255 motion). The panel determined that "reasonable jurists would debate whether the District Court was correct

6

"In a federal habeas corpus proceeding, we exercise plenary review [over] the district court's legal conclusions and apply the clearly erroneous standard to the court's factual findings." United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (quoting Lambert v. Blackwell, 134 F.3d 506, 512 (3d Cir. 1997)).

III.

Kelly argues that the District Court erred when it denied his ineffective assistance of counsel claim based on trial counsel's failure to conduct a reasonable investigation.[8] First, Kelly argues that the District Court applied a higher standard of "prejudice" than a defendant is required to show for an ineffective assistance of counsel claim under Strickland. Second, Kelly argues that the District Court previously found that he had met a higher standard than Strickland prejudice, and thus, under the law of the case doctrine, the District Court should have determined that he was prejudiced under Strickland. In addition to those two arguments, Kelly requests that we instruct the District Court, on remand, to make additional credibility findings and address the Strickland performance prong. We will address each argument in turn.

---

in its prejudice analysis. See Slack v. McDaniel, 529 U.S. 473, 484 (2000); Strickland v. Washington, 466 U.S. 668, 693-94 (1984)."

[8] The District Court also denied Kelly's ineffective assistance of counsel claims based on the failure of trial counsel to offer evidence of Kelly's post-arrest statement and the failure of trial counsel to request a "mere presence" jury instruction. Kelly does not discuss either of these denials in his appellate brief. Thus, he has forfeited any challenge to the District Court's denial of those claims. See Simmons v. City of Phila., 947 F.2d 1042, 1065 (3d Cir. 1991) ("[A]bsent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations.").

A.

Kelly argues that the District Court did not employ the correct standard for determining "prejudice" for an ineffective assistance of counsel claim under Strickland. He argues that the District Court used the more stringent "probability-of-acquittal" standard that defendants must meet to be granted a new trial based on newly discovered evidence.

To establish a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's conduct was deficient, and (2) the deficiency resulted in prejudice to defendant. See Strickland, 466 U.S. at 687; McNeil v. Cuyler, 782 F.2d 443, 447-49 (3d Cir. 1986). When assessing prejudice, a court is to determine whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694 (emphasis added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

This reasonable probability standard is less stringent than the probability-of-acquittal standard governing motions for a new trial based on newly discovered evidence. To be granted a new trial based on newly discovered evidence, a defendant must show that the "newly discovered evidence would probably produce an acquittal." United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976) (emphasis added).[9] In Strickland, the Supreme Court explicitly recognized the difference between the two standards:

_____

[9] "Probably" is typically treated as the equivalent of "more likely than not." See, e.g., CSX Transp., Inc. v. McBride, 564 U.S. 685, 705 (2011); Sawyer v. Whitley, 505 U.S.

8

[W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. [That] outcome-determinative standard has several strengths. It defines the relevant inquiry in a way familiar to courts, though the inquiry, as is inevitable, is anything but precise. The standard also reflects the profound importance of finality in criminal proceedings. Moreover, it comports with the widely used standard for assessing motions for new trial based on newly discovered evidence. Nevertheless, the standard is not quite appropriate.

Even when the specified attorney error results in the omission of certain evidence, the newly discovered evidence standard is not an apt source from which to draw a prejudice standard for ineffectiveness claims. The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged. An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

466 U.S. at 693-94 (citations omitted). Thus, to establish an ineffective assistance of counsel claim, unlike with a motion for a new trial based on newly discovered evidence, a "defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Id. at 693. A defendant need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

---

333, 366 (1992) (Blackmun, J., concurring); United States v. Rosario, 118 F.3d 160, 162 (3d Cir. 1997).

Kelly points to numerous instances where the District Court appears to have used the stricter standard for a motion for a new trial based on newly discovered evidence rather than the Strickland prejudice standard. For example, the District Court's opinion indicated:

> In determining whether counsel's failure to identify Jones and secure his testimony at trial was prejudicial to Kelly, the Court must examine Jones's testimony in light of the "totality of evidence at trial." In doing so, the Court concludes that Jones's testimony was not sufficiently credible that it likely would have produced an acquittal, in particular because of the numerous inconsistencies between Jones's testimony and the evidence of the record.

App. 26 (citation and footnote omitted) (emphasis added). Later in the opinion, the District Court again referenced the likelihood of an acquittal based on Jones's testimony: "A jury could not credit both Jones's testimony and Officer Stewart's testimony regarding the gun and, given the inconsistencies in Jones's version of events, it is unlikely that Jones's testimony would have resulted in an acquittal." App. 27 (emphasis added).

The Government argues that, despite the District Court's multiple references to the probability of acquittal, the District Court actually applied the correct legal standard. The Government points to the District Court's conclusion that "there is not a reasonable probability that if Jones's testimony had been introduced at trial, the jury would have credited this testimony and acquitted Kelly." Gov't Br. 33 (quoting App. 28); see also App. 25. But an incantation of the correct Strickland standard by the trial court will not automatically alleviate our concern that the District Court actually applied the incorrect

10

standard.  See, e.g., Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (remanding when the district court may have applied improperly stringent standard when it cited the incorrect standard once and the correct standard multiple times).  Nor do we accept the Government's argument that because the Supreme Court used the word "likely" in Strickland, the District Court did not err in stating the prejudice standard.  See Gov't Br. 33.  In Strickland, the Supreme Court's precise words were:  "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  466 U.S. at 696 (emphasis added).

In the case before us, the District Court repeatedly omitted Strickland's key word: "reasonably."  Instead, the District Court's entire discussion of the inconsistencies between Jones's testimony and Officer Stewart's trial testimony was framed using the incorrect standard.  Thus, we cannot be certain as to whether the District Court applied the "reasonable probability" standard, or another more stringent standard — such as the "probability of acquittal" or "more likely than not" standard.

We note that the Supreme Court has acknowledged that, despite the difference between the "reasonable probability" and "more likely than not" standards, this difference "should alter the merit of an ineffectiveness claim only in the rarest case." Strickland, 466 U.S. at 697; see also Harrington v. Richter, 562 U.S. 86, 112 (2011) ("[T]he difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'  [Strickland, 466 U.S.] at 693, 697. The likelihood of a different result must be substantial, not just conceivable.").

11

This, however, is the rare case. In the case before us, the District Court previously ruled in favor of Kelly on his motion for a new trial, in the context of the "probability-of-acquittal" standard.[10] Because of the similar language used in the District Court's denial of Kelly's collateral petition to that in the order granting Kelly's motion for a new trial, we cannot be certain that the District Court in fact applied the Strickland prejudice standard.

This is also the rare case where, based on the record, there might be a "reasonable probability" — even if not "more likely than not" — that the jury would have found reasonable doubt as to Kelly's guilt had Jones testified at trial. The District Court found inconsistencies between Jones's testimony and his earlier statement, as well as inconsistencies with the testimony of Officers Stewart and Clark. But perhaps those inconsistencies would not foreclose a "reasonable probability" that a jury would have

---

[10] However, as discussed infra, the District Court's probability-of-acquittal inquiry when ruling on Kelly's motion for a new trial was flawed.

acquitted Kelly.[11]  This is a question that we will leave for the District Court to answer in the first instance.[12]

Therefore, we will vacate the District Court's order denying Kelly's ineffective assistance of counsel claim based on the failure to conduct a reasonable investigation, and we will remand for the District Court to determine, based on the totality of the evidence, whether Kelly has demonstrated a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland 466 U.S. at 694.

## B.

Kelly next argues that the District Court had previously found that he had met the more stringent "probability of acquittal" standard when ruling on his motion for a new

---

[11] For example, as the District Court indicated when ruling on Kelly's motion for a new trial:  "Jones had a strong motive not to come forward" until after Kelly had been convicted, Jones did not stand to benefit from falsely helping Kelly, and Kelly's excluded post-arrest statement is corroborative of Jones's prospective testimony.  App. 574.  The District Court later held that — viewing Jones's testimony in totality — "it is unlikely that Jones's testimony would have resulted in an acquittal."  App. 18 (emphasis added). But given the District Court's earlier findings, we think it is possible that the District Court might find a "reasonable probability" that a jury would not have convicted Kelly if Jones had testified that he (Jones) threw the gun to the floor.

[12] The Government argues that "Kelly does not challenge the correctness of the district court's decision that he was not prejudiced by his counsel's alleged ineffectiveness."  See Gov't Br. 34.  Kelly disagrees with the Government's assertion that he does not challenge the finding of prejudice itself.  See Reply Br. 2-3.  We agree with Kelly and read his briefs to be challenging the District Court's finding of prejudice.

13

trial, and thus, under the law of the case doctrine,[13] the District Court should have found that he met the "prejudice" prong of the Strickland inquiry. To support his argument, Kelly points to the District Court's finding, in ruling on his motion for a new trial, that a "jury is likely to find Jones's prospective testimony credible," and that Jones's testimony is "likely to produce an acquittal." App. 574. The District Court, however, explicitly "decline[d] to make . . . a credibility determination [as to Jones's testimony]," id. at 571, but concluded that a jury was likely to find Jones's prospective testimony credible:

> [A] jury is likely to find Jones's prospective testimony credible for, inter alia, the following reasons: First, it is not logical for Jones to perjure himself for the boyfriend (Kelly) of one of his friends (Cephas). Second, Jones had a strong motive not to come forward and to avoid discussing the incident until Gant reported that Kelly had been convicted. Third, Jones cannot benefit by falsely helping Kelly. Fourth, some time after the arrest but while still at the bar, Kelly stated 'someone threw the gun at [him]' which corroborates Jones's prospective testimony.

Id. at 574 (alterations in original).

When we previously considered (and reversed) the District Court's order granting Kelly's motion for a new trial, we indicated that the District Court's probability-of-acquittal determination was problematic. We noted that if we were to reach the merits of the probability-of-acquittal determination, we would remand for the District Court to make its own credibility assessment as to Jones's testimony, as viewed in the context of the other evidence in the record. A district court "serve[s] as a gatekeeper to a new trial,"

---

[13] "Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages of the same case." ACLU v. Mukasey, 534 F.3d 181, 187 (3d Cir. 2008) (quotation marks omitted).

14

and thus it is for the court to "decid[e] in the first instance whether the defendant's proffered 'new evidence' is credible." Kelly I, 539 F.3d at 189 (quoting United States v. McCullough, 457 F.3d 1150, 1167 (10th Cir. 2006)).  In making that credibility determination, "the district court cannot view the proffered testimony in a vacuum; it must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial."  Id. We noted that, based on the record before us then, we could not "be certain" that the District Court made the credibility assessment itself or whether the District Court "weighed Jones's testimony against the testimony presented at Kelly's first trial."  Id. at 190.

Kelly I makes clear that the District Court did not necessarily find that Kelly met the probability-of-acquittal standard.  And even assuming, arguendo, that the District Court found Jones's testimony to be credible, it is not enough to consider the "proffered evidence in a vacuum."  Id. at 189.  For both newly discovered evidence claims and ineffective assistance of counsel claims, courts are to consider the totality of the evidence before a judge or jury.  See Strickland, 466 U.S. at 695 ("[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."); Kelly I, 539 F.3d at 189 (noting that for newly discovered evidence claims, a court "must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial").  As we indicated in Kelly I, the District Court had not clearly demonstrated that it weighed Jones's testimony with the other evidence offered at trial, and as a result, its

15

probability-of-acquittal determination was flawed.  Therefore, we reject Kelly's argument

that, under the law of the case doctrine, the District Court previously found him to meet

the higher probability-of-acquittal standard.

C.

Finally, Kelly argues that the District Court should be instructed on remand to (1)

make credibility findings as to the testimony of Kelly and his trial counsel, and then (2)

decide in the first instance whether Kelly has shown trial counsel's performance to be

deficient under Strickland.  Although we are remanding to the District Court to re-

examine whether Kelly was prejudiced under Strickland, we will not instruct the District

Court to make credibility findings as to counsel and Kelly, or necessarily reach the

performance prong on Strickland.  The Supreme Court has instructed:

> [T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Strickland, 466 U.S. at 697.  If the District Court on remand determines that Kelly has not

demonstrated a "reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different," id. at 694, then the District Court

need not reach the performance prong of Strickland.  Of course, if the District Court were

16

to find that Kelly has demonstrated prejudice, then it should make all necessary credibility findings and evaluate trial counsel's performance.

## IV.

For the foregoing reasons, we will vacate the District Court's order denying Kelly's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and we will remand to the District Court for further proceedings consistent with this opinion.